```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

THE BROOKYLN UNION GAS COMPANY d/b/a
NATIONAL GRID NY and NATIONAL GRID
USA SERVICE COMPANY, INC.,                    MEMORANDUM & ORDER
                                              19-CV-6363(EK)(VMS)
                Plaintiffs,

        -against-

NEWFIELDS COMPANIES, LLC,

                Defendant.

-------------------------------------x
```

ERIC KOMITEE, United States District Judge:

This case arises out of work that defendant NewFields Companies, LLC ("NewFields"), an environmental consulting firm, performed for the plaintiff companies, Brooklyn Union Gas Company d/b/a National Grid NY ("NGNY"), and its affiliate, National Grid USA Service Company, Inc. ("NG Service," and together with NGNY, "National Grid").  Plaintiffs are natural gas companies; they retained the Defendant to analyze their potential liability for pollution in the Gowanus Canal, a heavily contaminated waterway in Brooklyn.  They allege (among other things) that the Defendant labored under serious conflicts of interest in performing its analysis and misused their confidential information, in violation of several contracts.

Plaintiffs allege specifically that NewFields breached three contracts — executed in 2005, 2009, and 2010 — that

1

governed this relationship, and committed other state-law violations (breach of confidential relationship, breach of fiduciary duty, fraud, constructive fraud, and professional negligence). It turns out that each contract was signed by a different National Grid entity (one of which is not a party to this action), and each contains a different choice-of-forum provision. Inevitably, this forum dispute ensued.

Plaintiffs originally filed suit in New York State court. NewFields removed the action to this Court and subsequently moved to dismiss the complaint and compel arbitration. Plaintiffs oppose that motion and, in the alternative, seek to remand their claims under the 2009 contract. For the reasons set forth below, the claims under the 2005 contract are dismissed; NG Service's claims under the 2009 contract are remanded to state court; and NGNY's claims under the 2010 contract are stayed pending arbitration.

## I. Background

National Grid's predecessors owned and operated three "manufactured gas plants" ("MGPs") near the Gowanus Canal (the "Canal"). Compl. ¶ 9, ECF No. 1-1. In 2010, the United States Environmental Protection Agency ("EPA") added the Canal to the National Priorities (or "Superfund") List, a designation that requires the responsible parties to remediate the site. *Id.* ¶ 39.

Long before 2010, however, National Grid was aware that state and federal regulators might pursue it for cleanup costs. *See id*. ¶ 34. National Grid first retained Defendant in 2005 in connection with a "Voluntary Cleanup Agreement" with the New York State Department of Environmental Conservation, and this engagement continued when the EPA designated the Canal a Superfund site. *Id*. ¶¶ 14, 35, 37. As part of its work, Defendant assessed National Grid's responsibility for the accumulated pollutants in the Canal bed and issued two reports to National Grid, in 2007 and 2014, finding that MGPs were not a significant source of the Canal's pollution. *Id*. ¶¶ 11, 16. National Grid relied on those reports in its submissions to regulators. *Id.*

The EPA's investigation culminated in an "allocation proceeding" beginning in 2015, a zero-sum exercise in which the EPA allocated environmental rehabilitation costs among various polluters. *See id*. ¶ 84. Unbeknownst to National Grid, Defendant was also representing Exxon and fifteen other entities in the allocation proceeding, submitting expert reports on their behalf. *Id*. ¶¶ 17-18. National Grid now alleges that NewFields made use of National Grid's confidential information for the benefit of Exxon and others and to the detriment of National Grid. *See, e.g., id.* ¶¶ 20-21. National Grid further alleges that NewFields came to conclusions on behalf of its other

3

clients in the allocation proceeding that contradict the scientific conclusions they presented to National Grid earlier in this saga.  *Id.* ¶¶ 17, 22.

The three contracts at issue all contain confidentiality provisions.  NewFields is a party to all three, while the National Grid entity is different in each contract.  Each contract also provides for disputes to be settled in a different forum.

- The 2005 Scope of Work (the "2005 Contract") is between NewFields and KeySpan Corporation, the predecessor to National Grid USA, which is the parent company of NGNY and NG Service.[1]  This contract provides for disputes to be arbitrated in Connecticut.  *See* Exhibit A to Compl., ECF No. 1-1.

- The 2009 Non-Disclosure Agreement (the "2009 Contract") is between NewFields and NG Service.  This contract provides for disputes to be resolved in the Supreme Court of New York.  *See* Exhibit B to Compl., ECF No. 1-1.

- The 2010 Client Services Agreement (the "2010 Contract") is between NewFields, NGNY, and NGNY's counsel — the law firm Foley & Lardner LLP.  This contract provides for disputes to be arbitrated in New York.  *See* Exhibit C to Compl., ECF No. 1-1.

## II.  Discussion

The Court analyzes the appropriate disposition of claims brought under each contract, starting with the most recent.

---

[1] *See* Plaintiffs' Opposition Br. at 6 & n.7, ECF No. 25-1.

4

**A.   The 2010 Contract**

In the 2010 Contract, NGNY and NewFields agreed to arbitrate disputes in New York.  The Federal Arbitration Act ("FAA") "mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987) (discussing 9 U.S.C. § 4).  In applying the FAA, a court must examine two questions of "arbitrability":  "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement."  *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1032–33 (2d Cir. 2014).

The 2010 Contract between NewFields and NGNY states that "[i]n the event of any claim, dispute or other matter in question between the parties, [NGNY] and NewFields agree to submit the matter to binding arbitration" in New York.  2010 Contract ¶ 20.  The parties do not seriously dispute that the alleged breach of the 2010 Contract's confidentiality provision falls within the scope of that arbitration provision, at least as between the parties to the 2010 agreement.  But even if they did, that dispute would be for the arbitrator to resolve, not this Court.

"The law generally treats arbitrability as an issue for judicial determination 'unless the parties clearly and unmistakably provide otherwise.'" NASDAQ OMX, 770 F.3d at 1031 (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)); *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (also espousing the "clear and unmistakable" evidence standard). Here, the 2010 Contract clearly and unmistakably demonstrates the parties' intent to leave threshold questions of arbitrability to an arbitrator. It does this by explicitly incorporating the Commercial Arbitration Rules of the American Arbitration Association ("AAA"), which empower an arbitrator to rule on "the existence, scope or validity of the arbitration agreement." AAA Commercial Arbitration Rules and Mediation Procedures R-7(a) (July 1, 2016). The Second Circuit has expressly held that incorporation of these rules "serves as clear and unmistakable evidence of the parties' intent to delegate such issues [of scope] to an arbitrator." *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (finding "clear and unmistakable" standard satisfied by AAA Rule R-7(a)); *cf. Nasdaq OMX,* 770 F.3d at 1032 (incorporation of AAA rules did not, in itself, require that arbitrator decide arbitrability issue, where agreement expressly "carve[d] out certain issues from arbitration" and that carve-out was alleged to control).

6

Accordingly, this Court compels NGNY and NewFields to arbitrate their dispute under the 2010 Contract in New York. NGNY's instant action against NewFields is stayed pursuant to 9 U.S.C. § 3 pending the outcome of that arbitration.

**B. The 2009 Contract**

The 2009 Contract also covers the disclosure of information in connection with the "Remedial Investigation" of the Canal, but it was signed by NG Service, not NGNY. If the 2009 agreement had designated this Court as the forum for resolving disputes, I would stay the claims under that agreement pending the outcome of the New York State arbitration over the 2010 contract. *See, e.g., WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 75-76 (2d. Cir. 1997) (staying suit by non-signatory pending related arbitration, under the court's "inherent powers" to manage its docket). This Court is not, however, the designated forum. The 2009 Contract calls for any breach to be litigated in New York State Supreme Court. A federal district court must remand state-law claims if a forum-selection clause unambiguously binds "diverse parties by its express terms to a specific jurisdiction that is not federal." *Yakin v. Tyler Hill Corp.*, 566 F.3d 72, 76 (2d Cir. 2009). Therefore, the forum-selection provision in the 2009 Contract controls, and the Court grants Plaintiffs' motion to remand these claims to New York

7

State Supreme Court.[2] That court may, of course, decide for itself whether to proceed or stay any litigation over the 2009 Contract pending arbitration of the 2010 agreement.

**C.    The 2005 Contract**

The 2005 Contract may be the most important contract to this case, as it appears possible that much or most of the allegedly confidential information at issue was disclosed to NewFields before the 2010 and 2009 agreements came into existence. The National Grid company that is the counterpart to the 2005 Contract, however, is not a party to this litigation. That agreement is between NewFields and KeySpan Corporation, which, as described above, was the predecessor to National Grid USA, the parent company of NGNY and NG Service. *See* Plaintiffs' Opposition Br. at 6 & n.7. Neither Plaintiff has adequately alleged that it is entitled to recover damages under this contract. *See Subaru Distributors Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 124 (2d Cir. 2005) ("Under New York law[,] in order to recover as a third-party beneficiary of a contract, a claimant must establish that the parties to the contract

---

[2] Plaintiffs' remand motion was timely. Defendant removed this case from state court on November 11, 2019. On December 9, 2019, Judge William F. Kuntz II, then presiding over this case, granted the parties' joint application for an extension of time to file a motion to remand under 28 U.S.C. § 1447, allowing Plaintiffs to file its remand motion concurrently with its opposition brief. *See also Kamm v. ITEX Corp.*, 568 F.3d 752 (9th Cir. 2009) ("[A] forum selection clause is not a defect within the meaning of § 1447(c) and [] the thirty-day statutory time limit does not apply to a motion to remand based on a forum selection clause.").

8

intended to confer a benefit on the third party.").[3] This shortfall dictates dismissal.

Moreover, the 2005 Contract provides for arbitration in Connecticut, and a judge in the Eastern District of New York lacks the power to order arbitration in Connecticut. District courts can compel arbitration only "within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4; *see also, e.g., Klein v. ATP Flight Sch., LLP*, No. 14-CV-1522, 2014 WL 3013294, at *10-11 (E.D.N.Y. July 3, 2014) (declining to compel arbitration in Georgia).

Therefore, the claims under the 2005 Contract are dismissed.

D. **The Parties' Remaining Arguments**

***Estoppel.*** Defendant argues that the Court should send this entire case to arbitration in New York under the 2010 Contract, even though NG Service is not a party to that agreement. They cite *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163 (2d Cir. 2004), for the proposition that principles of

---

[3] The 2005 Contract provides that "[n]o arbitration arising out of or related to this Agreement shall include any person not a party to this Agreement except by written consent signed by the parties hereto and persons to be joined," but that NewFields "expressly agrees to be joined in any arbitration proceedings between [KeySpan] and [KeySpan's] designee if such joining is requested." 2005 Contract at 11. I note that the 2005 and 2010 agreements provide for arbitration by the AAA, and the 2005 Contract mandates application of the AAA's Construction Industry Arbitration Rules. An arbitrator may have the power to consolidate litigation over these agreements, pursuant to Construction Industry Arbitration Rule 7 ("consolidation or joinder"). The parties dispute this question, but it is for an eventual arbitrator to address, not this Court.

9

estoppel permit this Court to compel arbitration against even a non-party to the arbitration agreement. *JLM* does not, however, support this principle. Instead, it stands for the inverse: that under principles of estoppel, "a *non-signatory* to an arbitration agreement may compel a *signatory* to that agreement to arbitrate a dispute" that is "intertwined with the agreement the estopped party has signed." *Id.* at 177 (emphasis added); *see also Choctaw Generation Ltd. P'ship v. Am. Home Assur. Co.*, 271 F.3d 403, 407 (2d Cir. 2001) (signatory was estopped from resisting arbitration where the non-signatory's claims were intertwined with the arbitrable claims).

A non-party (even an affiliated entity) cannot be ordered to arbitrate except in specific circumstances emanating from the law of contract and agency. These circumstances are enumerated in *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995): incorporation by reference; assumption; agency; veil-piercing/alter ego; and estoppel. Defendant makes no argument under *Thomson-CSF* or the theories enumerated therein, and the Court does not see those exceptional circumstances presented here.

Defendant also contends that the "arbitrability" of NG Service's claims under the 2009 Contract should be submitted to an arbitrator, and not decided by this Court. However, "[t]he issue of whether a party is bound by an arbitration provision in

10

an agreement it did not execute is a threshold issue for the court, not the arbitrator, to decide." *KPMG LLP v. Kirschner*, 182 A.D.3d 484, 484-85 (1st Dep't 2020); *see also Mobile Real Estate, LLC v. NewPoint Media Grp., LLC*, 460 F. Supp. 3d 457, 479 (S.D.N.Y. 2020) ("[T]he issue of whether a non-signatory may be compelled to arbitrate is for the Court to decide."). In any event, as set forth above, the 2009 Contract does not contain an arbitration clause, having instead selected the New York State courts as the designated forum.

*Integration Clause.* The 2010 Contract contains an integration clause, which says that that agreement is the "final complete understanding of [NGNY] and NewFields regarding the subject matter thereof" and that it "supersedes all prior or contemporaneous communications, whether oral or written, concerning the subject matter of [the] Agreement." 2010 Contract ¶ 17. Defendant contends that this integration clause supersedes the earlier contracts, and therefore this entire case should be governed by the forum-selection clause in the 2010 Contract.

Contracting parties, of course, may enter into an agreement that overrides a forum-selection clause in a prior agreement. *E.g.*, *Applied Energetics, Inc. v. NewOak Capital Markets, LLC*, 645 F.3d 522, 526 (2d Cir. 2011). Indeed, "[u]nder New York law, it is well established that a subsequent

11

contract regarding the same matter will supersede the prior contract." *Id.* (cleaned up). However, Defendant points to no authority that these principles apply to sequential contracts between different parties. In the cases Defendant cites, *Applied Energetics*, 645 F.3d at 525-26, and *Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.*, 764 F.3d 210, 215 (2d Cir. 2014), the parties to each contract were the same.

"A modification of a contract requires the mutual assent of both, or all, parties to the contract. Mutual assent is as much a requisite element in effecting a contractual modification as it is in the initial creation of a contract." 17A Am. Jur. 2d Contracts § 496 (2020) (footnotes omitted). Recognizing as much, a district court in this Circuit recently declined to hold that a later contract's forum-selection clause superseded a prior contract's choice of forum, relying in part on the fact that not all parties to the prior agreement signed the later one. *PB Life & Annuity Co. v. Universal Life Ins. Co.*, No. 20-CV-2284, 2020 WL 2476170, at *10 n.6 (S.D.N.Y. May 12, 2020) (noting that prior agreement was "between three entities, one of whom is not a party to this litigation"). Another district court reached the same conclusion, even where the missing party from the earlier contract had the "same principals and legal representation" as the later party, but was a different legal identity. *Dome Tech., LLC v. Golden Sands*

12

*Gen. Contractors, Inc.*, No. 3:16-CV-01607, 2017 WL 5071264, at *6 (D. Conn. Nov. 3, 2017) ("It is difficult to see how such an incomplete set of parties — even assuming they have the same principals and legal representation, but have maintained their independence — would be able to supersede [the prior agreement] . . . .").

This conclusion holds even where the parties to the successive agreements are affiliates or parent and subsidiary. The contracts of one member of a larger corporate structure do not bound non-named affiliates unless, at a minimum, the parties include explicit and broad language in the contract seeking to include them. *Wellington Shields & Co. LLC v. Breakwater Inv. Mgmt. LLC*, No. 14-CV-7529, 2016 WL 5414979, at *6 (S.D.N.Y. Mar. 18, 2016); *see also Thomson-CSF*, 64 F.3d at 776 (parent company was not bound to a contract it did not sign absent the "ordinary principles of contract and agency," despite the contract "purport[ing] to bind it as an 'affiliate'"). Here, the 2010 Contract does not purport to bind NGNY's affiliates.

The 2010 Contract cannot, therefore, supersede the forum-selection clauses of the 2009 and 2005 Contracts, where the parties to those earlier agreements did not sign the 2010 Contract.

***Conflicting Provisions and the "Meeting of the Minds."***
Plaintiffs, for their part, argue that the entire case should

13

remain in federal court, or, failing that, the 2009 Contract should be remanded to state court. They base the former argument primarily on the assertion that the "colossal failure" of contract drafting here evinces an overarching lack of a meeting of the minds on the arbitration question. Transcript of Oral Argument, Jul. 22, 2020 ("Tr.") 12:10-12 (plaintiffs' counsel adopting that characterization to describe the conflicting forum-selection clauses). In support, Plaintiffs cite *Opals on Ice Lingerie v. Body Lines Inc.*, 320 F.3d 362, 370-72 (2d Cir. 2003) and *Ragab v. Howard*, 841 F.3d 1134, 1137-38 (10th Cir. 2016). Neither of those cases involved successive contracts that were signed by different sets of parties, however, and they are therefore inapposite. *See Opals on Ice Lingerie*, 320 F.3d at 365, 372 (no meeting of the minds where only one party signed the relevant contract); *Ragab*, 841 F.3d at 1137-38 (no meeting of the minds where same parties entered into agreements with conflicting arbitration clauses).

Here, rather than evincing the absence of any meeting of the minds, the conflicting agreements in the instant case evince multiple meetings of the minds between different parties in different contracts. Absent some indication that NGNY and NG Service should be collapsed into a single entity (under a veil-piercing theory or otherwise), the Court sees no basis for

14

concluding that different agreements between different parties evince a total lack of a meeting of the minds.

This obviously leaves the parties — and the Court — facing a less-than-efficient outcome. See Tr. 12:2-3 (describing the outcome as a "fine mess"). But it is not for the Court to void or rewrite otherwise binding agreements in the name of judicial efficiency. *See, e.g.*, *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985) ("[T]he Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums.").

### III. Conclusion

Accordingly, Defendant's motion to dismiss and to compel arbitration is granted in part and denied in part. The claims between Brooklyn Union Gas Company d/b/a National Grid NY and NewFields under the 2010 Contract are ordered arbitrated in New York, and this action is stayed pending that arbitration. The parties shall notify the Court within ten days of the resolution of the arbitration proceeding. Plaintiffs' motion to remand their claims under the 2009 Contract is granted; National Grid USA Service Company, Inc.'s claims against NewFields under the 2009 Contract are ordered remanded to New York State Supreme Court. Finally, Plaintiffs' claims regarding the 2005 Contract

15

are dismissed, without prejudice for the appropriate plaintiff to bring any claims arising out of that agreement in the appropriate forum.

SO ORDERED.

        /s Eric Komitee_____
        ERIC KOMITEE
        United States District Judge

Dated:   December 30, 2020
        Brooklyn, New York